**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Christopher Lazazzaro, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>The Hershey Company,<br><br>Defendant. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Christopher Lazazzaro (hereinafter "Plaintiff"), individually on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.     This action seeks to remedy the deceptive and misleading business practices of The Hershey Company (hereinafter "Defendant") with respect to the marketing and sale of Defendant's Hershey's and Lily's dark chocolate products throughout the state of New York and throughout the country.  Defendant's products include the following: (1) Hershey's Special Dark Mildly Sweet Chocolate; (2) Lily's Extra Dark Chocolate 70% Cocoa; and (3) Lily's Extreme Dark Chocolate 85% Cocoa (hereinafter the "Products").

2.     Defendant fails to disclose on the Products' packaging that the Products contain lead and cadmium.  Lead is a dangerous and harmful chemical when consumed, especially by pregnant women and children.  Scientists agree that there is no level of lead that is safe.  According to the Mayo Clinic, "[l]ead poisoning occurs when lead builds up in the body, often over months

or years.  Even small amounts of lead can cause serious health problems.  Children younger than 6 years are especially vulnerable to lead poisoning, which can severely affect mental and physical development.  At very high levels, lead poisoning can be fatal."[1]

3.      Cadmium is also a dangerous and harmful chemical when consumed.  Cadmium is used in many products, including batteries, pigments, metal coatings, and plastics, and it is found in cigarette smoke.  Exposure to even low levels of cadmium in air, food, water, and tobacco smoke over time may build up cadmium in the kidneys and cause kidney disease and fragile bones. Cadmium is also considered a cancer-causing agent.

4.      Consumer Reports Magazine and independent testing discovered that many of them contained high levels of the dangerous chemicals cadmium and lead.[2]  Using the California's Maximum Allowable Dose Level (MADLs) for lead (0.5 Micrograms) and cadmium (4.1mcg), Consumer Reports Magazine found that Hershey's Special Dark Mildly Sweet Chocolate product contained 265% of the MADL of lead; Lily's Extra Dark Chocolate 70% Cocoa product contained 144% of the MADL of lead; and Lily's Extreme Dark Chocolate 85% Cocoa product contained 143% of the MADL of lead and 101% of the MADL of cadmium.[3]  California's MADLs (otherwise known as Proposition 65) is a regulatory standard for chemicals causing reproductive toxicity.[4]

5.      Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves.

6.      Defendant's advertising and marketing campaign for the Products is false, deceptive, and misleading because it does not disclose the high levels of lead and cadmium in the

---

[1] https://www.mayoclinic.org/diseases-conditions/lead-poisoning/symptoms-causes/syc-20354717
[2] https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/
[3] *Id.*
[4] https://oehha.ca.gov/proposition-65/general-info/current-proposition-65-no-significant-risk-levels-nsrls-maximum

Products.  High levels of lead and cadmium in food products is material to reasonable consumers, because these chemicals pose serious health risk, even in small dosages.  Additionally, the lead and cadmium levels in the Products could not be known before purchasing them, and may not be determined without extensive and expensive scientific testing.  Accordingly, consumers rely on Defendant to be truthful regarding the ingredients, including the existence of lead and cadmium, in the Products.

7.      On the other hand, Defendant knew and could not be unaware of the existence of lead and cadmium in the Products.  Defendant sources the ingredients and manufactures the Products, and has exclusive knowledge of the quality control testing on the Products and the ingredients contained therein.

8.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations and omissions that the Products contained only dark chocolate ingredients when purchasing the Products.

9.      Plaintiff and Class Members paid a premium for the Products based upon Defendant's marketing and advertising campaign.  Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations and omissions, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

10.      Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendant also breached and continues to breach its warranties regarding the Products.  In addition, Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York and Defendant The Hershey Company is a citizen of Pennsylvania; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

12.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

13.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

14.     Plaintiff Christopher Lazazzaro is an individual consumer who, at all times material hereto, was a citizen of New York State.  Plaintiff resided in Nassau County, New York.  Plaintiff purchased the Products in Nassau County, New York multiple times during the Class Period.  Prior to purchasing the Products, Plaintiff read the Products' labels.

15.     Plaintiff purchased the Products in reliance on Defendant's representation that the Products contained only the dark chocolate ingredients and were safe for consumption.  Plaintiff believes that products that advertise as dark chocolate do not contain lead and cadmium.  If the Products did not contain lead and cadmium, Plaintiff would purchase the Products in the immediate future.

16.    Had Defendant disclosed that the Products contained lead and cadmium, Plaintiff would not have been willing to pay the same amount for the Products and/or would not have been willing to purchase the Products.  Plaintiff purchased and paid more for the Products than he would have had he known the truth about the Products.  The Products Plaintiff received were worth less than the Products for which he paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

17.    Defendant, The Hershey Company, is a Pennsylvania corporation with its principal place of business in Hershey, Pennsylvania.  The Hershey Company is authorized to do business in New York.  The Hershey Company is a conglomerate with a line of chocolate products, including the Products, purchased by Plaintiff and Class Members, which are available at retail stores and online throughout New York and the United States.

18.    Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

## FACTUAL BACKGROUND

19.    Consumers have become increasingly concerned about the effects of unhealthy chemicals in food products that they and their family members consume.  Companies, such as Defendant, have capitalized on consumers' desire for safe products, and indeed consumers are willing to pay, and have paid, a premium for such food products.

20.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains lead, cadmium, or other unsafe and unhealthy substances, especially at the point of sale.  Therefore, consumers must and do rely on Defendant to truthfully and honestly

report what their Products contain on their packaging or labels.  Indeed, testing for these chemically requires expensive and destructive scientific testing.  Given the relatively low price of the Products, no reasonable consumer would engage in such testing before purchasing the Products.

21.     However, public reports and articles recently revealed that Defendant's Products contain unsafe levels of lead and cadmium.  Indeed, these levels of lead and cadmium exceed the MADLs for these chemicals; posing serious health risks.  Despite these risks, Defendant failed to include any disclosures regarding lead and cadmium levels on its Products.

22.     Defendant knew and could not have been unaware of the lead and cadmium in the Products.  By law, Defendant has a responsibility to implement controls to significantly minimize or prevent exposure to chemical hazards in the Products. Defendant manufactures and sources the ingredients contained within the Products. Defendant tests the Products for quality control purposes, including the levels of toxic chemicals such as cadmium and lead contained therein. Additionally, Defendant receives Certificates of Analysis, and other certifications, from the suppliers of the ingredients used to create the Products.  These documents will also disclose the levels of chemicals, such as cadmium and lead, contained in each constituent ingredient.  These documents and its own testing alerted Defendant to the present of harmful chemicals, a such as lead and cadmium, in the Products.  Accordingly, Defendant had exclusive knowledge of the lead and cadmium levels in the Products, and Plaintiff have the Class could not have known about this risk.

23.     Consumers reasonably rely on the marketing and information on Defendant's labels in making purchasing decisions.  By marketing the Products as containing only dark chocolate ingredients, and not disclosing the presence of cadmium and lead, Defendant misleads reasonable

consumers.

24.     Despite Defendant's knowledge of lead and cadmium in the Products, Defendant failed to provide any warning on the place that every consumer looks when purchasing a product –the packaging or labels—that the Products contain lead and cadmium.

25.     Defendant's concealment was material because people are concerned with what is in the food that they are putting into their bodies, as well as parents and caregivers being concerned with what they are feeding to the children in their care.  Consumers such as Plaintiff and the Class Members are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the food packaging they buy.  Defendant knows that if it had not omitted that the Products contained lead and cadmium and that the Products were not safe or healthy for consumption then Plaintiff and the Class would not have paid a premium for the Products (or purchased them at all).

26.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

27.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

28.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for the Products. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

29.     Plaintiff and the Class Members all paid money for the Products; however, Plaintiff

and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

30.     Plaintiffs bring their claims for relief pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(2), or 23(b)(3) on behalf of the following Class (collectively "the Class"):

> All consumers who purchased the Products anywhere in the United States during the relevant statute of limitations.

Additionally, or in the alternative, pursuant to Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of himself and all members of the "New York Subclass", which shall initially be defined as:

> All consumers who purchased the Products in the state of New York at any time during the relevant statute of limitations.

Excluded from the Class is governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

31.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

32.     The Class and New York Subclass are properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity,

commonality, typicality, and adequacy because:

33.    Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New New York Subclass who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

34.    Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

      a.    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased its Products;

      b.    Whether the Products contain lead and cadmium;

      c.    Whether Defendant breached the implied warranty of merchantability relating to the Products;

      d.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

      e.    Whether Defendant's false and misleading statement concerning its Products were likely to deceive the public; and

      f.    Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

35.    Typicality: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class and New York Subclass was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products and suffered the same injury.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

36.    Adequacy: Plaintiff is an adequate Class representative because his interests do not

conflict with the interests of the Class Members he seeks to represent, he has a strong interest in vindicating his rights and the rights of the Class and New York Subclass, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

37. <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class and New York Subclass . The Class and New York Subclass issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

38. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

       a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

       b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

       c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

       d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

       e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

       f.    This class action will assure uniformity of decisions among Class Members;

       g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

     h.     Class Members' interests in individually controlling the prosecution of separate actions is outweighed by its interest in efficient resolution by single class action; and

     i.     It would be desirable to concentrate in this single venue the litigation of all class members who were induced by Defendant's uniform false advertising to purchase its Products because they contain dark chocolate ingredients and not Lead and Cadmium.

39.    Accordingly, this Class and New York Subclass are properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

40.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

41.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

42.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products and from the charging consumers monies in the future.

43.     Defendant misleadingly, inaccurately, and deceptively advertise and market the Products to consumers.  By misrepresenting the true contents of the Products, Defendant's marketing and labeling misleads a reasonable consumer.

44.     Defendant had exclusive knowledge of the lead and cadmium levels in the Products.

45.     Defendant's misrepresentations and omissions were material because consumers are concerned with the safety of food that purchase, and the ingredients therein.

46.     Defendant's improper consumer-oriented conduct—including Defendant's misrepresentation and omissions regarding the lead and cadmium levels in the Products—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products when they otherwise would not have.  Defendant made its untrue and/or misleading statements and representation willfully, wantonly, and with reckless disregard for the truth.

47.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for a Products that—contrary to Defendant's representation and omissions—contain lead and cadmium.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

48.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

49.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory damages of $50 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and

costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass Members)

50.     Plaintiff repeats and realleges each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

51.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce
> or in the furnishing of any service in this state is hereby declared
> unlawful.

52.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or
> of the kind, character, terms or conditions of any employment
> opportunity if such advertising is misleading in a material respect.
> In determining whether any advertising is misleading, there shall be
> taken into account (among other things) not only representation
> made by statement, word, design, device, sound or any combination
> thereof, but also the extent to which the advertising fails to reveal
> facts material in the light of such representations with respect to the
> commodity or employment to which the advertising relates under
> the conditions proscribed in said advertisement, or under such
> conditions as are customary or usual . . .

53.     Defendant's labeling and advertisements contain untrue and materially misleading

statements concerning Defendant's Products inasmuch as they misrepresent the existence of lead

and cadmium in the Products.  By misrepresenting the true contents of the Products, Defendant's

marketing and labeling misleads a reasonable consumer.

54.     Defendant had exclusive knowledge of the lead and cadmium levels in the Products.

55.     Defendant's misrepresentations and omissions were material because consumers

are concerned with the safety of food that purchase, and the ingredients therein.

56.     Plaintiff and the New York Subclass Members have been injured inasmuch as they

relied upon the labeling, packaging, and advertising and paid a premium for the Products which—contrary to Defendant's representation—do not disclose the existence of lead and cadmium in the Products. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

57.     Defendant's advertising and products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

58.     Defendant made its untrue and/or misleading statement and representation willfully, wantonly, and with reckless disregard for the truth.

59.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

60.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

61.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.     Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, and/or selling of the Products.

63.     The Products is considered a "good" under the relevant laws.

64.     UCC section 2-314 provides that for goods to be merchantable must (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved.

65.     Defendant breached the implied warranty of merchantability because the Products had lead and cadmium.  Food products are not expected to have lead and cadmium.

66.     Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Product.  Defendant was put on constructive notice of its breach through media reports, as alleged herein, and upon information and belief through its own product testing and records.

67.     Plaintiff and each of the members of the Class were injured because the Product contained lead and cadmium.  Defendant thereby breached the following state warranty laws:

   a.     Code of Ala. § 7-2-314;

   b.     Alaska Stat. § 45.02.314;

   c.     A.R.S. § 47-2314;

   d.     A.C.A. § 4-2-314;

   e.     Cal. Comm. Code § 2314;

   f.     Colo. Rev. Stat. § 4-2-314;

   g.     Conn. Gen. Stat. § 42a-2-314;

   h.     6 Del. C. § 2-314;

   i.     D.C. Code § 28:2-314;

   j.     Fla. Stat. § 672.314;

k.      O.C.G.A. § 11-2-314;

l.      H.R.S. § 490:2-314;

m.      Idaho Code § 28-2-314;

n.      810 I.L.C.S. 5/2-314;

o.      Ind. Code § 26-1-2-314;

p.      Iowa Code § 554.2314;

q.      K.S.A. § 84-2-314;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-314;

t.      Md. Commercial Law Code Ann. § 2-314;

u.      106 Mass. Gen. Laws Ann. § 2-314;

v.      M.C.L.S. § 440.2314;

w.      Minn. Stat. § 336.2-314;

x.      Miss. Code Ann. § 75-2-314;

y.      R.S. Mo. § 400.2-314;

z.      Mont. Code Anno. § 30-2-314;

aa.     Neb. Rev. Stat. § 2-314;

bb.     Nev. Rev. Stat. Ann. § 104.2314;

cc.     R.S.A. 382-A:2-314;

dd.     N.J. Stat. Ann. § 12A:2-314;

ee.     N.M. Stat. Ann. § 55-2-314;

ff.     N.Y. U.C.C. Law § 2-314;

gg.     N.C. Gen. Stat. § 25-2-314;

hh.   N.D. Cent. Code § 41-02-31;

ii.   II. O.R.C. Ann. § 1302.27;

jj.   12A Okl. St. § 2-314;

kk.   Or. Rev. Stat. § 72-3140;

ll.   13 Pa. Rev. Stat. § 72-3140;

mm.   R.I. Gen. Laws § 6A-2-314;

nn.   S.C. Code Ann. § 36-2-314;

oo.   S.D. Codified Laws, § 57A-2-314;

pp.   Tenn. Code Ann. § 47-2-314;

qq.   Tex. Bus. & Com. Code § 2.314;

rr.   Utah Code Ann. § 70A-2-314;

ss.   9A V.S.A. § 2-314;

tt.   Va. Code Ann. § 8.2-314;

uu.   Wash. Rev. Code Ann. § 6A.2-314;

vv.   W. Va. Code § 46-2-314;

ww.   Wis. Stat. § 402.314; and

xx.   Wyo. Stat. § 34.1-2-314.

68.     As a direct and proximate result of Defendant's breach of the express warranty,
Plaintiff and Class Members were damaged in the amount of the price they paid for the Products,
in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

69.     Plaintiff repeats and realleges each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

70. Plaintiff, on behalf of himself and consumers nationwide, brings a claim for unjust enrichment.

71. Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

72. Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

73. Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

74. It is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

75. Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of

Civil Procedure on behalf of the proposed Class described herein; and (ii) appointing Plaintiff to serve as representative for the Class and Plaintiff's counsel to serve as Class Counsel;

(b) Awarding monetary damages and treble damages;

(c) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e) Awarding punitive damages;

(f) Awarding Plaintiff and Class Members its costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

Dated: December 28, 2022                    Respectfully submitted,

                                            **THE SULTZER LAW GROUP P.C.**

                                            By: __/s/ Jason P. Sultzer_____
                                            Jason P. Sultzer, Esq.
                                            Daniel Markowitz, Esq.
                                            85 Civic Center Plaza, Suite 200
                                            Poughkeepsie, NY 12601
                                            Tel: (845) 483-7100
                                            Fax: (888) 749-7747
                                            sultzerj@thesultzerlawgroup.com
                                            markowitzd@thesultzerlawgroup.com

                                            **MILBERG COLEMAN BRYSON
                                            PHILLIPS GROSSMAN, PLLC**
                                            Gary M. Klinger, Esq. (*Pro Hac Vice* forthcoming)
                                            227 W. Monroe Street, Suite 2100
                                            Chicago, Illinois 60606

Telephone: (847) 208-4585
gklinger@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
Nick Suciu III, Esq. (*Pro Hac Vice* forthcoming)
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.:(313) 303-3472
nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Trenton R. Kashima, Esq. (*Pro Hac Vice*
forthcoming)
401 West C St., Suite 1760
San Diego, CA 92101
Tel: (308) 870-7804
tkashima@milberg.com

**LEVIN SEDRAN & BERMAN**
Charles E. Schaffer, Esq. (*Pro Hac Vice*
forthcoming)
David C. Magagna Jr., Esq. (*Pro Hac Vice*
forthcoming)
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
dmagagna@lfsblaw.com
cschaffer@lfsblaw.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown, Esq.
1 Old Country Rd., Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
jbrown@leedsbrownlaw.com

*Counsel for Plaintiff and the Class*